UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ITRON, INC.                                                    PLAINTIFF


VS.                                     CIVIL ACTION NO. 3:15CV330TSL-RHW


STEPHEN D. JOHNSTON, AJIT HABBU
AND GARY KESSLER                                               DEFENDANT


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants Stephen D. Johnston, Ajit Habbu and Gary Kessler for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff Itron, Inc. has responded in opposition to the motion.  The court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes the motion should be denied.[1]

Background

Plaintiff Itron is engaged in the development and manufacture of electric, natural gas and water meters, including standard meters and next-generation advanced and smart metering products, metering systems and related software and services.  Around 2010, Itron began doing business with SmartSync, a Jackson-based company

---

[1]   Itron filed a motion to strike certain of defendants' summary judgment evidence.  Defendants responded that they would withdraw the challenged evidence.  In light of their response, the motion to strike is moot and will be denied as such.

that was in the business of providing "smart grids" for wireless connections between devices, and in particular, "smart" electricity meters.  Toward the end of 2011, Itron began negotiating for a potential acquisition of SmartSync and on March 30, 2012 entered an agreement to acquire SmartSync pursuant to an Amended and Restated Plan of Merger (Merger Agreement).  The merger closed on May 1, 2012, at which time Itron acquired SmartSync for approximately $100 million.  At the time of the negotiations and merger, defendant Johnston was CEO of SmartSync; defendant Habbu was CFO; and defendant Gary Kessler was SmartSync's Vice President of Product Marketing.

Itron alleges that on April 25, 2012, just six days before closing of the merger, SmartSync executed a contract with one Consert, Inc. which, at least facially, obligated SmartSync to purchase $60 million in intellectual property licenses from Consert over a five-year period (the Consert Agreement).  As a result of the merger, Itron inherited SmartSync's obligations to Consert under the Consert Agreement, notwithstanding that when the merger closed, Itron was not aware of the Consert Agreement.  In fact, Itron did not become aware of the Consert Agreement until some two months after the merger, when it received an invoice from Consert for $3 million, at which time Itron began an investigation and discovered the Consert Agreement.  Itron promptly filed a declaratory judgment action against Consert in the Chancery Court

of Delaware, seeking to void, or in the alternative reform the Consert Agreement.  See Itron, Inc., as successor-in-interest to SmartSync, Inc. v. Consert Inc., Case No. 7720-VCL (Del. Chan Ct.).  On February 2, 2015, the day before the case was scheduled to be tried, Itron and Consert reached a settlement of the litigation by which Itron paid a substantial sum, though substantially less than $60 million, in settlement of the claim.

Itron then brought the present action seeking to recover from defendants Habbu, Johnston and Kessler the amount it paid in settlement of the Consert litigation, together with attorney's fees and expenses it incurred in connection with that litigaiton. In this action, Itron alleges that prior to the merger, each of these defendants knew that SmartSync had entered this undeniably "material contract" (as defined in the Merger Agreement) and also knew that SmartSync had not disclosed this contract to Itron and in fact had represented to Itron that no "material contracts" had been entered; yet defendants failed to disclose the contract to Itron.  Itron alleges that had it known of the Consert Agreement before the merger closed, it would not have consummated the merger under the terms stated in the Merger Agreement.  However, because the Consert Agreement was not disclosed, Itron lost the opportunity to seek an adjustment of the merger consideration or to seek cancellation of (or otherwise address) the Consert Agreement prior to closing and instead, became subject to the

3

liabilities created by the Consert Agreement, causing Itron losses and damages in connection with the Consert Agreement and associated litigation.

Defendants' Motion for Summary Judgment

Defendants requested and were granted leave to file an early summary judgment motion to present three specific grounds for summary judgment, namely, that Itron's claims against them are (1) time-barred, (2) barred by judicial estoppel, and/or (3) barred by the voluntary payment doctrine.  The court, having considered the parties' arguments and evidence relating to these specific issues, concludes that defendants have not demonstrated that summary judgment is proper on any of these bases.[2]

Argument 1: Itron's Claims are Time-Barred

Defendants' contention that Itron's claims are time-barred is based on Section 10.1 of the Merger Agreement, which states that the representations and warranties of SmartSync set forth in the

---

[2]      In their reply brief, defendants raised a number of additional arguments, including that Itron cannot succeed on its claim against them because (1) it cannot prove defendants had any duty to disclose; (2) the claim is barred by the economic loss rule; and (3) the claim is barred by the merger clause in the merger agreement.  By order entered October 14, 2016, the court granted a motion by Itron to strike, ruling that it would not consider these additional arguments as they were not properly before the court and that the arguments could be raised, if at all, in a separate summary judgment motion.  Thereafter, defendants requested leave to file a second "early" summary judgment motion raising these arguments; the magistrate judge denied that motion by order entered December 12, 2016.

4

agreement, including representations in an officer's certificate executed by Johnston on behalf of SmartSync in connection with the merger, survive only for twenty-four months following the closing of the merger, and which further provides that "the Company {SmartSync} shall [not] have any liability whatsoever with respect to any such representations and warranties unless a claim is made hereunder prior to the expiration of the survival period for such representations and warranties...."  Defendants assert that in accordance with this provision, this action is time-barred since it was not commenced until April 15, 2015, well more than two years after the merger closed on May 1, 2012.  However, as Itron aptly argues in its response, the Merger Agreement does not shorten the limitations period for its claims in this cause both because defendants are not parties to that agreement and the terms of the Merger Agreement do not shorten the statute of limitations for tort claims.  Itron's claims in this case are for negligent misrepresentation, not breach of contract, and these claims were filed within the three-year limitations period applicable to such claims.[3]

_____

[3]     The Merger Agreement provides for application of Delaware law to "all disputes or controversies arising out of or relating to this Agreement or the transactions contemplated hereby...."  Unlike Mississippi law, which prohibits contractual shortening of limitations periods, see Miss. Code Ann. § 15-1-5, Delaware law "does not have any bias against contractual clauses that shorten statutes of limitations...," GRT, Inc. v. Marathon GTF Tech., Ltd., No. CIV. A. 5571-CS, 2011 WL 2682898, at *3 (Del.

Argument 2: Judicial Estoppel Bars Itron's Claims

Defendants next argue that Itron's claims in this cause are predicated entirely on the enforceability of the Consert Agreement and yet Itron, having consistently taken the position in the Delaware Consert litigation that the Consert Agreement should be declared void and unenforceable and/or should be rescinded, that the invoices issued pursuant to the Consert Agreement were null and void, and having advanced affirmative defenses to Consert's breach of contract claims, should be found judicially estopped from claiming in this case that the Consert Agreement was enforceable.

"Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." Hall v. GE Plastic Pac. PTE, Ltd., 327 F.3d 391, 396 (5th Cir. 2003) (internal quotation marks and citation omitted).  "The purpose of the doctrine is to prevent litigants from 'playing fast and loose' with the courts...." Id. (internal quotation marks and citation

_____

Ch. July 11, 2011).  Itron denies that Delaware law applies, both because its claims arise in tort, not from the contract, and because defendants are not parties to the agreement.  It submits, though, that there is no conflict between the laws of Delaware and Mississippi in any way that is relevant to the issues raised by the present motion since both Mississippi and Delaware law have a three-year statute of limitation on claims for negligent misrepresentation.  See 10 Del. C. § 8106; Miss. Code Ann. § 15-1-49.

6

omitted).  "Judicial estoppel is an equitable doctrine invoked by

a court at its discretion."  <u>Claimant ID 100197593 v. BP Expl. &</u>

<u>Prod., Inc.</u>, No. 16-30283, 2016 WL 7029142, at *3 (5th Cir. Nov.

16, 2016) (quoting <u>New Hampshire v. Maine</u>, 532 U.S. 742, 750

(2001)); <u>see</u> <u>also In re Coastal Plains, Inc.</u>, 179 F.3d 197, 205

(5th Cir. 1999) (stating judicial estoppel is an equitable

doctrine, and the decision whether to invoke it is within the

court's discretion).  The Fifth Circuit has held that "[f]or a

party to be judicially estopped from arguing a position, the

position must be clearly inconsistent with the party's previous

one, and the party must have clearly convinced the court to accept

that previous position."  <u>Id.</u>[4]

Itron submits that summary judgment is not in order as

defendants have not shown that Itron has taken any inconsistent

position in this lawsuit.  It agrees that in the Consert

litigation, it did contest its liability under the Consert

Agreement and asserted various defenses to enforcement of the

Agreement.  It argues, though, that it has not taken a position in

this case that the Consert Agreement was necessarily enforceable

or that any of the defenses it asserted in the Consert litigation

were untrue.  Rather, it asserts that its claims in this case are

_____

[4]   "[G]enerally [the Fifth] Circuit considers judicial
estoppel 'a matter of federal procedure' and therefore applies
federal law."  <u>Hall v. GE Plastic Pac. PTE Ltd.</u>, 327 F.3d 391, 395
(5th Cir. 2003).

grounded on its position that in the Consert litigation, it faced a reasonable risk of being found liable for $60 million or more in damages for breach of contract and that its decision to settle with Consert was thus a reasonable and prudent decision.

In response, defendants point out that the complaint contains no allegation by Itron merely that it faced a "reasonable risk" of being found liable for $60 million under the Consert Agreement. Rather, according to defendants, implicit on Itron's allegation in the complaint herein that the Consert Agreement satisfied the Merger Agreement's definition of "material contract" is that the Consert Agreement was an *enforceable* "material contract." The court finds no merit in this contention. Whether or not it was ultimately enforceable, the Consert Agreement appeared on its face to qualify as a "material contract" within the contemplation of the Merger Agreement. That is what Itron has alleged: that the Consert Agreement "facially" was a "material contract" which Itron did not authorize and which was not disclosed to Itron. Itron alleges that as a result of SmartSync's execution of the Consert Agreement and defendants' non-disclosure of the agreement, Itron suffered material harm in that it "lost the opportunity to seek an adjustment of the Merger Consideration, or to seek a cancellation of (or otherwise address) the Consert Agreement prior to the Merger Closing" and instead, "closed the merger and unwittingly assumed liability for the Consert Agreement" which resulted in

substantial losses to Itron, due to the Consert Litigation and
resulting settlement.  There may be no specific allegation in the
complaint that Itron's settlement was reasonable and prudent
because it faced a "reasonable risk" of being found liable for $60
million or more in damages for breach of contract.  However, the
court does not read the complaint herein to allege, explicitly or
implicitly, that the Consert Agreement was valid and enforceable.

In the court's opinion, even if Itron's position in this case
were inconsistent with its position in the Consert litigation,
judicial estoppel would still be inapplicable because the Delaware
court did not "clearly accept" any position of Itron.  "The
purpose of the prior success or 'judicial acceptance' requirement
is to 'minimize[] the danger of a party contradicting a court's
determination based on the party's prior position and, thus,
mitigate[] the corresponding threat to judicial integrity.'"
Hall, 327 F.3d at 398 (5th Cir. 2003) (quoting Coastal Plains, 179
F.3d at 206); see also 18B C. Wright, A. Miller, & E. Cooper, Fed.
Practice and Procedure § 4477 (2d ed.) ("[A]bsent any good
explanation, a party should not be allowed to gain an advantage by
litigation on one theory, and then seek an inconsistent advantage
by pursuing an incompatible theory.").  The court recognizes that
"[t]he 'judicial acceptance' requirement does not mean that the
party against whom the judicial estoppel doctrine is to be invoked
must have prevailed on the merits," Coastal Plains, 179 F.3d at

9

206, and that the doctrine may properly be applied if the previous court accepted the party's argument "either as a preliminary matter or as part of a final disposition," id. So long as the previous court "'necessarily accepted, and relied on' a party's position in making a determination, then the prior success (judicial acceptance) requirement is satisfied." Hall, 327 F.3d at 399 (quoting Ahrens v. Perot Sys. Corp., 205 F.3d 831, 836 (5th Cir. 2000)).

Here, defendants note that in the Consert litigation, Itron filed a summary judgment motion, arguing that certain conditions precedent to Consert's right to be paid under the contract had not been met. Not only was Itron's position on that motion not inconsistent with any position it has asserted in this case, but the court clearly did not accept Itron's position, as it denied Itron's motion for summary judgment. Defendants further point out that in the Consert litigation, Consert submitted a letter requesting leave to file a summary judgment motion; Itron responded by letter opposing the request and asking to file its own summary judgment motion. The Delaware court denied both parties' requests, explaining that, in the exercise of its discretion, it found it "desirable to inquire into or develop more thoroughly the facts at [a bench] trial in order to clarify the law or its application." See Itron, Inc. v. Consert Inc., Case No. 7720-VCL (Del. Chan Ct. Aug. 22, 2014). In this court's

opinion, by electing to proceed with a bench trial for the purpose
of developing a fuller factual record rather than allowing the
parties to present their positions *via* summary judgment, the
Delaware court did not necessarily and clearly accept Itron's
position.  Accordingly, judicial estoppel does not apply.

Argument 3: Voluntary Payment Doctrine Bars Itron's Claims

Defendants' final argument on this summary judgment motion is
that Itron's claims are barred by the voluntary payment doctrine.
In the court's opinion, defendants have not shown that summary
judgment is proper on this basis.  The voluntary payment doctrine,
or volunteer doctrine, holds that:

> "[A] voluntary payment can not be recovered back, and a
> voluntary payment within the meaning of this rule is a
> payment made without compulsion, fraud, mistake of fact,
> or agreement to repay a demand which the payor does not
> owe, and which is not enforceable against him, instead
> of invoking the remedy or defense which the law affords
> against such demand."

Genesis Ins. Co. v. Wausau Ins. Cos., 343 F.3d 733, 736 (5th Cir.
2003) (quoting McDaniel Bros. Constr. Co., Inc. v. Burk-Hallman
Co., 253 Miss. 417, 175 So. 2d 603, 605 (1965)).  "An involuntary
payment is one 'not proceeding from choice.'" Id. at 738 (quoting
66 Am. Jur. § 112 (2001)).  "Payments that are made by virtue of
legal obligation or by accident or mistake are inherently
involuntary," as are "[p]ayments made under compulsion." Id.  See
also Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am., 13 So. 3d
1270, 1279 (Miss. 2009) (describing a "volunteer" as "[a] stranger

11

or intermeddler who has no interest to protect and is under no legal or moral obligation to pay.") (quoting State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co., 255 So. 2d 667, 668 (Miss. 1971)). Defendants contend that Itron's settlement payment to Consert in connection with the Delaware litigation is a voluntary payment that Itron had no legal obligation to make, as clearly established by Itron's pleadings and other papers filed with the Delaware chancery court, and that Itron is thus barred from seeking to recover this voluntary payment from defendants.

Itron argues in response that there are only two contexts in which the voluntary payment doctrine applies, and this is not one of them.  These two contexts are: (1) when a party is attempting to recover back a payment from the party to which the payment was made, and (2) when the two parties have joint responsibility for a single loss or indebtedness to a third party, and one co-obligor seeks to recover from the other.  Itron contends that the doctrine has no application where a party seeks to recover a payment not from the recipient or a co-obligor, but instead from a responsible third-party tortfeasor.  It submits that in that context, the doctrine simply does not apply.  The court, having considered Itron's arguments, is not persuaded that the voluntary payment doctrine is so limited.

A number of cases have rejected a voluntary payment defense where one party's alleged tortious conduct has created another's

12

contractual liability to a third party, not because the doctrine, as a legally-recognized doctrine, could not apply in that context, but rather because a requirement for application of the doctrine, e.g., a *voluntary* payment, was missing.  For example, in <u>RSUI Group, Inc. v. Willis of Alabama, Inc.</u>, No. 07-0142-WS-B, 2007 WL 2469571 (S.D. Ala. Aug. 29, 2007), the court found that the voluntary payment rule did not apply because an insurance agent caused the insurer to be *legally obligated to pay* under an insurance policy by failing to include a particular exclusion in the insurance binder as he had been instructed.  <u>Id.</u> at *1.  The court reasoned that it would make little sense to hold that a party with an "*inescapable obligation*, wrongfully created by another, to pay an innocent third party forfeits all right to be made whole by the wrongdoer if he honors that obligation."  <u>Id.</u> (emphasis added).

In <u>Auto-Owners Insurance Co. v. Tomberlin, Young & Folmar Insurance</u>, 874 F. Supp. 2d 1310 (M.D. Ala. 2012), the defendant solicited a surety bond from Auto-Owners for one S&S on some $9 million in subcontracts S&S had with Dick Corporation.  <u>Id</u>. at 1313.  Auto-Owners issued a performance and payment bond to S&S based on the defendant's representation that S&S had an untouched $2,000,000 line of credit.  <u>Id.</u>  Dick Corporation subsequently declared S&S in default and sued Auto-Owners on the bond.  <u>Id</u>.  Auto-Owners eventually settled with Dick Corporation and then sued

13


the defendant to recover the amount it paid in settlement on the theory that the defendant's failure to perform its duties as soliciting agent for the bond caused Auto-Owners to be legally obligated to pay for S&S's default through a bond Auto-Owners would not have issued but for the defendant's actions.  Id. at 1316.  The court found that the defendant, which admitted that Auto-Owners had a legal obligation under the bond, failed to demonstrate its entitlement to summary judgment based on the voluntary payment defense.  Id.

Similarly, in Minnesota Pipe and Equipment Co. v. Ameron Int'l Corp., 938 F. Supp. 2d 862 (D. Minn. 2013), where a pipe distributor was clearly legally liable under the terms of its contract with its customer to pay the difference between the pipe required to be used in a project and the pipe on which the customer had based its bid for the project, the voluntary payment doctrine did not bar the distributor's claim against its pipe supplier for negligently misrepresenting that the type of pipe included in the bid was approved for use in the project.  Id. at 875.  The voluntary payment doctrine was inapplicable because the distributor's payment was not voluntary as the distributor was bound by contract to reimburse its customer once the pipe was rejected.  Id.[5]

---

[5]     The court notes that in Bank of Commerce v. SouthGroup Insurance & Finance  Services, LLC, 73 So. 3d 1106 (Miss. 2011), after settling twenty-three lawsuits brought against it by

In <u>Frank W. Schafefer, Inc. v. C. Garfield Mitchell Agency,</u>
<u>Inc.</u>, 612 N.E.2d 442, 82 Ohio App. 3d 322 (Ohio Ct. App. 1992),
involving a somewhat analogous situation, an insured, after
settling a workers' compensation claim against it, filed suit to
recover the amount of the settlement from its insurance agent, who
was alleged to have negligently failed to recommend stop-gap
coverage which would have provided coverage for the claim.
Following a jury verdict for the insured, the agent appealed,
arguing, *inter alia*, that the proximate cause of the insured's
claimed loss was its voluntary decision to settle, and not any
negligence on the agent's part.  612 N.E.2d at 452.  More
particularly, the agent argued that the insured should have
anticipated that the law would change in its favor, making it more
difficult for the claimant employee to prevail at trial, and the
insured therefore should have refused to settle.  <u>Id.</u> at 453.

---

customers for alleged RICO violations, the Bank of Commerce filed
suit against its insurance agent to recover the amount of its
settlement, alleging that it would have had coverage for the
claims but for the agents' negligent failure to recommend that the
Bank purchase entity coverage.  <u>Id</u>. at 1108.  The trial court
found that the "volunteer doctrine" precluded the Bank's claims
because there was no indication that the settlement was made by
compulsion, fraud, or mistake of fact.  The Supreme Court did not
address the lower court's holding in this regard, finding instead
that the claim was barred by the statute of limitations.  <u>Id</u>. at
1111.  However, in his dissenting opinion, Justice Kitchens opined
that summary judgment was not proper based on the voluntary
payment doctrine as there was a genuine issue of material fact as
to whether the settlement was reasonable and made under compulsion
where the settlement was for $600,000 for all twenty-three cases
and the estimated cost to try just one case was over $1,000,000.
<u>Id</u>. at 1112 (Kitchens, J., dissenting).

The court found that the insured was not required to pass on an advantageous settlement purely on the possibility that the law might change and that the settlement "was not an unreasonable and voluntary payment, nor negated [the insured's] proximate cause evidence." Id.[6]

The court is not persuaded that the voluntary payment doctrine could not apply in the circumstances of this case, if the requirements for applying the doctrine were met. Nevertheless, the court is unable to conclude that summary judgment is proper on the basis of the voluntary payment doctrine. The Fifth Circuit has emphasized that "whether a payment was compelled or made voluntarily is a highly factual determination." Genesis, 343 F.3d at 739 (citing Glantz Contracting Co. v. General Electric Co., 379 So. 2d 912, 917-18 (Miss. 1980)); see also Southern Ins. Co. v. Affiliated FM Ins. Co., 830 F.3d 337, 347-48 (5th Cir. 2016) (stating that "[f]or obvious reasons," the determination whether a

---

[6]     In support of its position that the voluntary payment doctrine does not apply where a party seeks to recover a payment, not from a co-obligor but from a tortfeasor, Itron cites Read v. Benedict, 200 Ga. App. 4, 406 S.E.2d 488 (1991), and Avianca, Inc. v. Corriea, Civ. A. No. 85-3277(RCL), 1992 WL 93128 (D.D.C. Apr. 13, 1992). Neither case persuades the court that the voluntary payment doctrine would not apply in the circumstances of this case, if the requirements of the doctrine's application were otherwise established. The plaintiff in Avianca sought recovery on a theory of intentional/fraudulent conduct; the court found the equities swayed against application of the doctrine. 1992 WL 93128, at 7. There are no allegations of fraud or intentional misconduct in this case. Read, as defendants note, involved application of Georgia's statute on voluntary payments, OCGA § 13-1-13, and turned on the statutory text and legislative intent.

payment was compelled or voluntary is "highly factual") (quoting
Genesis).  At the same time, the court noted the dearth of
Mississippi case law to explain what is meant by "compulsion," id.
at 738, which prompted the court to look to other jurisdictions
and the legal literature in an attempt to determine how the
Mississippi Supreme Court would apply the voluntary payment
doctrine to the specific facts presented, id.  The court observed
that "[n]ot all pressure for payment amounts to compulsion,"
Genesis, 343 F.3d at 739 (citations omitted), and stated the
following general rule for whether a payment was made voluntarily:

> where a person pays an illegal demand, with full
> knowledge of all the facts which render the demand
> illegal, without an *immediate and urgent necessity to
> pay*, unless it is to release his or her person or
> property from detention or to prevent an immediate
> seizure of his or her person or property, the payment is
> voluntary.  It is only when, in an emergency for which a
> person is not responsible, the person is compelled to
> meet an illegal exaction to protect his or her business
> interest that he or she may recover the payment, but if,
> with knowledge of the facts, that person voluntarily
> takes the risk of encountering the emergency, the
> payment is voluntary and may not be recovered.

Id. at 739 (quoting 66 Am. Jur. 2d § 109).

In Genesis, President Casino and its CGL carrier, Genesis
Insurance Company, contributed $200,000 toward the settlement of a
tort claim brought by a patron who was hit in the President
parking lot by a casino bus.  They then sought to recover that
amount from Wausau Insurance Companies, which provided President's
automobile liability coverage.  Referencing the above-quoted

17

standard, the court in <u>Genesis</u> opined that the settlement by
President and Genesis "lack[ed] the sense of immediacy often
accompanied by compelled payments" where the litigation involved
(including a declaratory judgment action brought by Genesis
against Wausau) could "take years to resolve." <u>Id</u>. at 739.  The
court found, moreover, that the stakes, in the event President and
Genesis refused to participate in the settlement "were of an
insufficiently dire magnitude to justify finding that their
settlement contributions were compelled." <u>Id</u>. at 739-40.  The
court explained that "[a] payment is considered coerced only where
it is made to avoid the loss of a necessity, or to prevent an
injury to a person, business or property which is different and
disproportionately greater than the unlawful demand." <u>Id</u>. at 74
(internal quotation marks and citation omitted).  The court
concluded the potential loss to President and Genesis did not meet
this standard, reasoning that

> the prospect of paying a maximum, as estimated by
> President and Genesis, of $1,000,000 between them after
> the jury returned its verdict, and all appeals (of both
> the state case and this action) had been exhausted, did
> not threaten to have such "a disastrous effect to
> business" that President and Genesis, two national
> corporations, one of whose business was to insure
> against precisely these kinds of judgments, felt
> compelled to contribute to the Baker settlement.
> <u>Randazzo v. Harris Bank Palatine, N.A.</u>, 262 F.3d 663,
> 669 n. 1 (7th Cir. 2001).  This is particularly true
> when we take appellants' contention (which is well
> supported) that the Genesis policy did not cover the
> Baker accident (meaning that they would ultimately not
> be required to pay any portion of a jury verdict) at

face value.  *Compare* <u>Halstead Terrace Nursing Cntr.,
Inc. v. Scottsdale Ins. Co.</u>, 1997 WL 124263 (finding
that where insured nursing home was faced with "
'enormous potential liability' in excess of the policy
limits," treble damages, and disruption to personnel by
continued litigation of a wrongful death suit against
it, $175,000 payment in order to enable settlement was
compelled).

<u>Genesis</u>, 343 F.3d at 740.

More recently, in <u>Liberty Mutual Insurance Co. v. Holloway</u>,
556 F. App'x 299, 305 (5th Cir. 2014), the Fifth Circuit disagreed
with the district court's classification of a payment of $1.9
million via settlement as a voluntary payment which could not be
recovered.  In that case, after a bankruptcy trustee filed a
preference action to recover $3.25 million that certain insurers
had received in settlement payments from the debtor, Friede
Goldman, the insurers agreed to settle the litigation by returning
$1.9 million and retaining the balance of $1.35 million.  The
Fifth Circuit noted that the insurers who made this payment

agreed to the settlement because they faced the
likelihood of a judgment requiring them to return the
entire $3.25 million in settlement payments from Friede
Goldman back to the bankrupt estate in the preference
litigation.  In order to avoid returning the full
amount, the insurers agreed to a compromise: they would
return $1.9 million in exchange for dismissal of the
preference suit.  The volunteer rule does not apply to
this payment because the insurers' payment was in
settlement of a hotly contested litigation.  The payment
was compelled by the desire to limit their liability,
and no one argues that the amount paid was unreasonable.
<u>See</u> <u>Certain Underwriters at Lloyd's of London v.
Knostman</u>, 783 So. 2d 694, 698 (Miss.2001) (citation
omitted); <u>see</u> <u>also</u> <u>Canal Ins. Co. v. First General Ins.
Co.</u>, 889 F.2d 604 (5th Cir. 1989).

19

Holloway, 556 Fed. App'x at 305 n.15.

There are facts in this case that could tend to support a finding of compulsion.[7]  Unlike Genesis, where litigation might have been expected to last years, Itron settled the Consert litigation on the eve of trial.  And, while Itron denied the validity and/or enforceability of the Consert Agreement, it is not apparent that its position was likely to be accepted, as was the case in Genesis.  The Delaware litigation, rather, was "hotly contested," as in Holloway.  Moreover, Itron's potential exposure was to a judgment of $60 million.  At this time, the court cannot conclude that a jury could not reasonably find that Itron's payment "was compelled by the desire to limit their liability," or that the "amount paid was unreasonable."  Holloway, 556 Fed. App'x at 305 n.15.

Conclusion

Based on the foregoing, it is ordered that defendants' motion for summary judgment is denied.

SO ORDERED this 26th day of January, 2017.


                              /s/ Tom S. Lee_____
                              UNITED STATES DISTRICT JUDGE

_____

[7]   The court does not accept Itron's suggestion that the mere fact that the chancery judge may have encouraged the parties to consider settlement could be found to constitute compulsion.

20